v. City of Austin, Mr. Johns. May it please the Court. This dispute is about private property rights, not taxation. The Tax Injunction Act prevents litigants from using the federal courts to restrain assessment, levy, and collection of state taxes, but that concern isn't implicated here at all. All property tax issues are being handled in state proceedings. My clients have already paid the property taxes owed under Texas law and aren't asking the federal courts to give a refund. They're not suing the tax collector, assessor, or challenging anything that he did. Instead, we complain about an illegal annexation that violated basic constitutional rights. We're only asking the federal court to rule on that unconstitutional annexation and abridgment of property rights. It's up to the state courts to decide what effect, if any, that ruling would have on taxation. But under the City's theory, no court can do anything about the unconstitutional land grab. We ask the court to reject the City's radical theory for three reasons. First, our important constitutional claims belong in federal court. Second, under direct marketing and CIC services, the TIA isn't triggered at all. Third, under the City's theory, the landowners can't challenge the land grab here or in state court, but have to hope that the Texas AG or Travis County AD will exercise discretion to protect their constitutional rights. That kind of state court relief for their federal claims is not plain, speedy, or efficient as required by the TIA. First, our claims belong in federal court. A core function of the federal judiciary is to step in when local governments deny due process and the equal protection of the laws to an unpopular minority, as happened here. For nearly a century, there was universal agreement that my client's properties were outside Austin City limits. That was until 1985-86, when the City attempted a limited purpose annexation, which the legislature reversed in 1988. So, I'm looking at the ordinance from 1986, which, as I read it, says that all these lands are within the regular jurisdiction, but we're not taxing them because we don't provide City services. Right? Your Honor, I don't think that's correct. They declared the limited purpose jurisdiction of our properties, but said that there were certain property that was covered by the lake that would be in the full purpose jurisdiction of the City. But the ordinance itself, in its title, in fact, declares the limited purpose jurisdiction of these properties. So, that is what happened under the 1986 ordinance. And then, in 1988, the Texas legislature automatically disannexed any properties that were strip annexation along. Because they had one year to do that, and they didn't do that. Yeah, they had about a year and a half and didn't do that, Your Honor. So, what, I hate to get into this, but what does it mean to say that their limited purpose jurisdiction, that is annexation, is that what you're saying? That was an annexation, Your Honor. And limited purpose means that the City isn't required to provide full services, and therefore cannot tax. So, then the 2019 ordinance says, it treats that 86-1 as totally valid, and now it says they're within the full purpose jurisdiction. Yes, but amidst the 1988 disannexation. And the reason that the City did that was to get around the legislature's new prohibition against forced annexation. The City simply enacted an ordinance declaring the land has always been within its full purpose jurisdiction at all times since 1891, retroactively changing the land's legal status in an Orwellian fashion. And that, in and around the legislature, clearly violated Texas law, and it also made this a federal case. That's because under the federal constitution, the City cannot change property interests retroactively, nor can the City take property rights without notice and hearing, which the And the City denied the landowners the equal protection of the laws by failing to apply the same annexation processes that it gives to everybody else. That's why the claim belongs in federal court. Second, under direct marketing and CIC services, the City, the TIA, isn't triggered at all. The TIA doesn't mean that we can never challenge the constitutionality of a law. As direct marketing teaches, we just can't ask a federal court to restrain the assessment, levy, and collection phases themselves. Here, assessment, levy, and collection of our— Can we talk about the standard set in those cases? Because I want to make sure—I want to talk about the standard that we're supposed to apply under the cases you mentioned, the direct marketing and CIS services. Would you agree that those cases make clear that the test we apply is not a formalistic test? It's not just, is the complaint actually implicating an injunction of a tax, but sort of a more functional analysis, that that's basically what's going on, even if it's not technically what's going on? Well, I think— Do you agree with that characterization? Your Honor, I would say that that was the approach of the federal courts before TIA, but Justice Thomas's opinion for the court made it a textualist test. The court says that we actually have to look at the three things that restrain refers to, and that's assessment, levy, collection. Are we actually restraining any of those three phases? It doesn't apply— Sure, but would you say that the opinion sets out that it's only formalistically whether the court's doing that, or is it sort of more as a practical, functional matter? What I'm trying to figure out is, is the dispute between the parties about the legal standard or about how to apply the legal standard. I think it is about how to apply the legal standard. Okay. That's what I thought it was. You agree, though, as long as it's practically about a tax or assessment or levy, then the court's practically about it. Well, if Your Honor means that we're supposed to look at the party's subjective motive for bringing the case, that's not the right standard. CIC services instructs the court not to look at the subjective motive for bringing suit, but instead to look only to the relief the suit requests. And on that point, the city itself has admitted that the landowner's request of relief, quote, may not appear to implicate the TIA, and while the city's wrong about a lot of our claims, the target of our claims is the city's wrongful assertion of jurisdiction, and our requested remedies target invalidating that separate legal mandate. So — What's the ultimate beef that your clients have with the city, besides the tax? Where — I get that they don't like to pay taxes. I hate paying taxes. So I get that. Right. Anything else besides the tax? Yes, Your Honor. And that's an important point under CIC, because if it's a separate legal mandate, you look, does this have implications beyond taxes? And it's not — and taxation is just one bundle in the stick. Annexation involves — the city can do anything with this, short-term rentals, building permits, zoning — Zoning. Yes, Your Honor. It has not been doing zoning up until now? Its efforts have been all over the map. And in fact, sometimes our people can't even get library cards because the city hasn't updated all its systems to show that our people are even in the city. But I do understand that you're allowed to vote in city elections? That was uneven as well, Your Honor. And before, we were not allowed to vote in city elections involving bonds. Before when? Before 2019. Not allowed to vote in city elections? Well, Your Honor, again, the treatment was uneven. I think the city just disregarded the obligation to provide services and bring everybody into full-purpose jurisdiction. That was a general requirement. It also disregarded the 1988 automatic disannexation. Well, it probably disregarded a lot as regards to who can vote in Austin. So — Yes, Your Honor. That's hardly unique. Well, under direct marketing, the court actually describes what we're supposed to do. It says the word restrain works on carefully selected list of technical terms, assessment, levy, collection, and not on an all-encompassing term like taxation. And so we have to look at each of the three discrete phases to see, is this a challenge to assessment, for example? Here we're challenging the city's unconstitutional retroactive changing of our land's legal status, which was something that happened long before and separate from any calculation of liability, which is the definition of assessment. What we're challenging happened before appraisal, before the city put us on its jurisdictional maps, before creation and certification of tax rolls, before anything involving the appraisal district tax collector or assessor. And again, we've already paid the taxes required under Texas law and aren't asking the federal courts to tell the city to give the money back. So we can't possibly be challenging assessment, levy, or collection. But Judge Pittman, the R&R that he adopted, relied on old cases decided before direct marketing saying that the TIA bars any suit that would, quote, deprive the city of tax revenue. And respectfully, the effects test simply isn't the standard for applying the TIA anymore. It's also important, even if one of our claims or any of our requests of relief somehow implicates the TIA's concerns, which they don't, the case law admonishes courts to deny problematic claims or requests for relief, not to just dismiss the case altogether. And that's because subject matter jurisdiction is decided on a claim-by-claim basis under decisions from the Supreme Court and other courts of appeals. CIC services, as we discussed before, also shows why we win. There, the court announced that the AIA, the Anti-Injunction Act, which is, and by extension, the TIA, doesn't bar a suit that contests or seeks relief from a separate legal mandate from the tax in question. And here, the separate legal mandate, the separate legal wrongs, are the city's fiat annexation and deprivations of due process equal protection. Let me ask you a question. Yes. How many annexation case, Texas annexation cases have gone into federal court in recent years? Not many, Your Honor. There was a Texas case from Eastern District of Texas that this court reversed on race judicata grounds, but it had said the TIA does not apply to that annexation case. There's an Indiana Land Company versus City of Greenwood case, Southern District of Indiana, Mormon versus Wood, Kentucky, Duncan versus Town of Blacksburg, Western District of Virginia. And remind me which is the Fifth Circuit. I did read that in... That's Superior Oil versus City of Port Arthur, Your Honor. Oh, right. Yes. So, the R&R's analysis is wrong under CIC. It conflicts with the First Circuit's recent application of the CIC in Harper versus Reddick. Under CIC, we have to ask, is there a legal mandate distinct from the taxation itself and with effects beyond taxation? Here, the answers are resounding yes. The city had to make a land grab before it could attempt the money grab. The land grab, the illegal annexation, came first. And one reason we know the land grab is a separate legal mandate is that annexation, as we discussed before, creates so many other powers and obligations, zoning, permits, voting, full panoply of regulation. And we're asking the court to invalidate the land grab, not the money grab. It's up to the Texas courts to decide what to do with that. All this depends, to me, as I'm thinking about it, on how you characterize the 2019 ordinance because on its face, it seems to say we're overturning the 86 one, which resulted in the property not being subject to ad valorem taxes. So, on its face, it's talking about taxes and therefore, arguably, the TIA. But your argument is that if you go behind that statute to the background legislation of the state, that then you realize that this is invalid. So, it may be the court is allowed to make decisions before it decides jurisdiction and it may be more appropriate to tell the district court, you've got to run that to ground and then decide whether in a jurisdiction would depend on whether this is actually an ad valorem ordinance or an illegal annexation. Yes, your honor. We would love to get to the merits. I think that's correct. I know you want to get to the merits, but I'm saying if in fact this character, I'm sure he's going to dispute what you're saying about this, but if in fact it's a valid ordinance, then in other words, you'd sort of be getting to the merits in order to decide jurisdiction, which you don't normally do, but I'm not quite sure how else you would. Yes, and your honor, again, we think the Texas legislature's disannexation in 1988 is important too, because if. Absolutely, I mean, yeah, yeah. So, you're saying it would be a question of law and no facts anyway. I think the facts are pretty undisputed. It's really a question of law. And one point that I think is related to what your honor is saying too is that if the court concludes that we're challenging assessment, levy, or collection, that's a problem because then we have no plain, speedy, and efficient remedy for our federal claims in state court. And that's because if this case is really about taxes, assessment, levy, collection, then it belongs in the state tax court protest where we cannot make the city a party or raise constitutional challenges to the annexation. And according to the city's theory, we can't challenge annexation in state court either or these constitutional rights related to it, because they say that we need to bring a Colorado proceeding. Unless the court has any questions, I'll clean up on rebuttal. Thank you. Good morning, your honors. May it please the court. Brandon Mickel for the City of Austin Appellee here. Your honors, the briefing in this case is extensive and there are many issues upon which the parties do not agree. But the parties do agree upon one issue, which is that the TIA controls whether or not this case continues in federal court on these issues. The Tax Injunction Act is the threshold issue which appellants cannot overcome in this matter. I want to speak a little more distinctly, please. Yes, your honor, of course. Your honor, the TIA is the threshold issue over which the appellants in this case cannot overcome in order to keep their case in federal court. There are two primary reasons which I would like to discuss concerning TIA since that was the focus of the dismissal at the district court level and also the majority of the parties' briefing in this matter, your honor. The first is that despite appellants' claims the contrary, this case is about taxation, not annexation. Second, there is a plain, speedy, and efficient remedy available to these appellants in state court. And I'd like to address these issues in turn. First, we just heard my friend on the other side here argue that appellants view this as an annexation case and not taxation. However, the focus on annexation here is misplaced. At the end of the day, there's no doubt it's about taxes. The appellants' reliance upon direct marketing, to begin with, is misplaced for a couple of reasons. The first being that assessment and collection, as used in the TIA, are not, quote, reporting requirements as were discussed in direct marketing. Reporting requirements are, quote, information gathering, as that court discussed them. They happened before assessment and collection. Factually as well, this case and its resulting holding are inapplicable to the appellants here. Second, the term restrain was given great importance by the direct marketing court. My friend's correct, Justice Clarence Thomas spent quite a deal of time talking about textualism, the originalism of it. And the word restrain was ultimately held to be a narrower view than the lower courts had held it to be, in which the lower courts had held it to be applicable to the entire taxation process, rather than does it apply to the assessment, levying, and collection of the taxes. Restrain was given a very narrow meaning. Another significant difference in the direct marketing case, just based purely on the facts that the appellants wish to hold here as applicable to their claims against the city, is that the direct marketing party was not challenging a tax that they would owe. They were challenging those separate reporting requirements that they were required to give to the state of Colorado, twice actually to their customers and then once to the state. At no time would they have been on the hook for taxes, so the court was able to very easily distinguish their reporting requirement argument from the ultimate issue  Well, I'm just looking at the plaintiff's complaint here and I was struck by the magistrate judge saying it says tax 100 times in the complaint. Well, the first claim is limits on a power of a municipality to change the annexation status of land. And then it goes into the history. City illegally annexed the shoreline properties. City council had no authority to annex. Retroactive, count one, retroactive change in the property status violated 14th Amendment right to due process. Count two, properties converting to properties to full purpose jurisdiction violated 14th Amendment guarantee and so on. And when you get to the claim for relief, you go down to Q in the requested claims for relief, so that's all but about, that's about 18 prayers for relief and only two of them say, talk about taxes, declare that the city's and ACC's notice is to TCAD that the shoreline properties within their units are invalid and so on. So there are only two of those out of 18 prayers. So how can you say this is solely about taxes? For a few reasons, Your Honor, but to specifically address what the court just mentioned, the case law holds that if the relief requested is from taxes, then it is a tax case. Even though it's only two of what they asked for. And I would also point out that I'll address later. Well, what about their point that normally you look at things according to claim by claim? Yes, Your Honor. Claim by claim is, I'm not disputing that you look at it claim by claim. However, their second case that they cite, CIC Services, explicitly said that you look to the objective relief requested, not the subjective motive of the taxpayer. Your Honor, essentially, if you were allowed to bring as the court. I understand that. I was reading you from the prayer for relief, which is the objective statement of what they're looking for. Yes, Your Honor. Not subjective. Yes, Your Honor. And I agree with that is exactly how they pled it, but simply not placing, you know, their request for either disannexation under the state or federal, which they included both. Just simply not placing those first and not the taxes issue first does not obviate the fact that they're still asking for tax relief. We can say dismiss the suit as to all the claims that seek tax relief and go forward with the annexation claims. So what's wrong with that? Your Honor, the issue, well, if the court simply wants to allow the annexation claims in federal court, then plaintiff is going to have to prove that they're not asking for anything related to the taxes. If that's all dismissed, then it's just the annexation, and we're only talking about that. That would be a very different case from what we're talking about here. The court is correct. In fact, in their complaint, they mentioned the word tax 111 times. This is very plainly the point of their action. And under the second prong of my argument, which is that there is a plain, speedy, and efficient remedy for them in state court, two things. First of all, they are required, the appellants here are required to demonstrate that that plain, speedy, and efficient remedy is not plain, speedy, and efficient at the state court level before they're allowed to bring an action. What's your best court case for a claim like this of disannexation in state court? Your Honor, my friend's, I'm sorry, I did not mean to speak over the court. My friend's correct. The superior oil case is the closest it comes, and it was just, it was. That's federal court. Oh, in state court, Your Honor, I'm sorry. State court. In state court, Your Honor, I don't have one at the tip of my fingers. If the court would like, I can file a 28J letter within the next 24 hours. Well, I mean, why didn't you cover that in your original brief? Because the whole point is if there's a plain, speedy, and efficient remedy in Texas courts. I, and you know, I should have run this to ground, but I'm well aware of when the city of Houston incorporated Clear Lake and Kingwood 20 or 25, 30 years ago. Those were both litigated. And I don't remember whether they went into state court or federal court. Did you, did you come across anything about that? That doesn't ring a bell, Your Honor, but I can say that if these parties here had brought their claims in state court, it would be a very different case, simply because there is a plain, speedy, and efficient remedy there. There are three. But you can't even cite a single case to me. I mean, surely this is not the only annexation or disannexation case that's ever been filed in the state of Texas. I understand the court's meaning, Your Honor. And maybe I just reiterate here that because the plaintiff's, the appellant's primary goal here is avoidance of tax, that is the focus of our. But you don't deny that there is no remedy for them under the, under the tax code? I don't deny that there's no remedy. There are remedies, Your Honor. There are remedies about their enrollment and the amount of taxes or whatever, but nothing goes to the validity of this ordinance repealing the 1986 one. So to that, Your Honor, I'd say two things. First of all, under the tax code, tax code section 42.21, they are allowed to bring a suit against the taxing entity, which they did. That, in that case, was abated on their own motion. But that can't tell the city not to consider them part of the city when it talks about things like zoning or police protection or planning, whatever, right? Right, Your Honor. But that's taxing, the tax code is only one of three avenues they have at the state court level. They can also bring their constitutional claims against the city in the state court. So how come you didn't cite a single case to that effect? I was just wondering. Your Honor, I believe, I believe that we cited the Cameron Appraisal case. What, Cameron? Cameron Appraisal District, V. Rourke. I believe we also cited the Texas Education Agency case. And I would highlight for the court that there was a case cited by the magistrate's opinion that my friend mentioned, the Clark v. Andrews County Appraisal case, which is almost exactly the same in template to what appellants have here, which is those plaintiffs brought 5th and 14th Amendment challenges. And the Clark decision held that they could bring them against the city. Moreover, the Texas tax code and the constitutional claims are not their only means. There are also five exceptions, which we highlighted from the MAG-T decision, which was cited in appellant's brief. And those five exceptions, of those five, arguably two are square on with what these appellants are asking. Let me put it concretely. If they were to file a case in state court tomorrow, would the city challenge jurisdiction? We would not challenge jurisdiction, Your Honor. You're representing that on behalf of the city, correct? Yes, Your Honor. And you are representing that if they were to prevail in state district court, you see no reason why that any such judgment would not be enforceable against the city? I would never represent that if there was a judgment it would be unenforceable, but we would put up a vigorous defense as we would be entitled to. And I do have case law that says that just because there is a vigorous defense or there are defenses does not mean that there isn't a plain, speedy, and efficient remedy. And those cases are from the Washington v. I'm not concerned about that, but I am concerned about the catch-22, the possibility of placing the taxpayers in a catch-22. I understand, Your Honor. If you kicked them out of federal court, or maybe one way to handle it is to put the federal court, federal suit in abeyance pending their ability to pursue a case in state court. I understand, Your Honor. And on that issue of the catch-22, which my friend mentioned in their briefing and alluded to a moment ago, I would like to point out that there is a similar problem with that logic, which is appellants here are claiming that this is not a tax case, and yet they're saying that they are bound by the tax code. They cannot both be bound by the tax code and then claim that it's an annexation case because I think you're misrepresenting their position, so don't push that. But, you know, the other thing that really disturbs me is that if you read the history of what has happened here, I don't see how the city of Austin has a legal leg to stand on. So, you know, the TIA deal is very interesting, but if the history is the whole . . . properly represented in the pleadings and uncontested, then it makes the city's defense here look pretty specious. Yes, Your Honor, but I would also highlight for the court that our defense here is to the federal jurisdiction over this case. We haven't gotten into the merits of, as Your Honor so aptly pointed out . . . Well, but as I was saying, it depends on how you characterize the 2019 ordinance, right? If it is an invalid annexation, then what you have to prove and what you're attempting to prove is that annexation is synonymous with somehow assessment collection and levy of taxes. And that is the appellant's opinion, Your Honor, that it is synonymous with the actions that happened before all of those. The cases they cite, the direct marketing opinion, CIC services, they are attempting to draw those parallels between what happens before assessment levy and collection. So, you're saying annexation period is synonymous with tax, no matter who challenges an annexation and it's a tax case? If the objective relief sought would be taxes, then CIC would hold that that case is a tax case, Your Honor. What if there are other objectives that have nothing to do with taxes? An annexation suit still a tax case? Yes, Your Honor. What about two different competing jurisdictions over annexation? Tax revenue is certainly going to be an issue, but that's not the only reason that the annexation is challenged. What about that? Correct, Your Honor. And that's why it's important to highlight that it's the issue of taxes in federal court over state taxes. If, again, as the Court pointed out, if they had brought this in state court, these causes of action, the Fifth and Fourteenth Amendment violations in state court, it would be a very different scenario. But they're asking for relief from a federal court. But we'll dismiss everything that isn't Fifth, Fourth, whatever amendment claims and move forward. What is wrong with that? That's what I, what says that you can't, that a state has a right to oust someone from going into federal court to assert Fifth Amendment claims? Correct, Your Honor. It's not the state saying that. It's how we are asking the court to recognize the case law on the TIA. And if the appellants here would like the court to dismiss all the actions related to taxes, that would be, indeed, a very different case. And that would not implicate the TIA, and we would not be having this discussion over whether the court has jurisdiction. So opposing counsel has said that this is not just a tax case, annexation implications for any number of areas. We talked about zoning, etc., etc. What's your response to that? About the fact that it's not a tax case, Your Honor? About that annexation, this is an annexation case, and that they have interests on this legal dispute that have nothing to do with tax. What's your response? Sure, well, I would say two things. First of all, if their case is really about annexation and not taxation, then they should have put their, I think it's their second or their very last state claim for disannexation up at the front in state court, asking for disannexation, rather than asking not to pay the taxes. If the taxes aren't implicated at all, and they don't care about the taxes, just the annexation, then I don't think the notion is, I don't think the assertion is that they have no interest in the tax. I think their assertion is they care about the annexation for a number of reasons, one important of which is tax. What's your response to that? Is your argument that that's a lie? It's a misstatement that they really, in fact, only care about tax or something else? I would not say it's a lie, Your Honor. I would say it's one argument cloaked in another, which is you can get through tax relief by challenging the annexation, and you can't out-and-out say under the TIA that you want to challenge the tax, as the case law makes very clear. People can bring mixed claims, and we can dismiss some saying we don't have jurisdiction of these, but we have jurisdiction of these. Just because you include a claim in a complaint over which federal court does not have jurisdiction does not defeat jurisdiction over the rest of the case, does it? No, Your Honor. All right, so give me your best case that says we don't have jurisdiction over constitutional claims that have nothing to do with tax. I don't, Your Honor. Over cases that have nothing to do with tax, none, Your Honor. But the problem here is that- A claim, not the case. A claim. A claim. Yes, Your Honor, I don't have a case that says that. I'm not saying that that is our position. My position here is that the claims these appellants have brought all implicate the objective relief, which is tax relief. And under the TIA tax cases, specifically CIC services, that means that those causes of action are not properly brought in federal court. Do you contest that a landowner in Texas can challenge annexation? No, no, Your Honor. No, but that, again, they have a plain, speedy remedy in state- If I may, let me follow up on that, because this is where I'm coming from as well. I assume you would agree that this is an annexation challenge? I believe that's the way they frame it, Your Honor. Right. But it is literally an annexation challenge. Let us further see if we agree that challenge, if they prevail, regardless of whether they win or not on the merits, will have a number of implications. One big one, arguably the biggest one, is tax. But it's not the only one. Would you agree with that? Absolutely, Your Honor. Absolutely. There are a number of implications. As my friend mentioned, they have questions about voting. There are questions about running for office. I mean, the file is thick. There are a number of issues they raise on whether or not, as they put it, newly annexed citizens of Austin, they are enjoying the same rights. So I'm struggling to come up with a reasonable hypo. But imagine a lawsuit that challenges some big law for various constitutional violations, one ramification of which would be a reduction in tax. But there are a lot of other ramifications. Would the TIA bar all of it, part of it, none of it? If the court in that hypothetical, Your Honor, deemed that the objective motive was tax ablutions, then it would bar those claims. It's purely a subjective motive test under these cases? Is that why I was asking earlier, I think we're struggling over the standard. So I'm trying to understand, what's your take on how to best interpret these cases? To your view, it's subjective motive? No, Your Honor, I mean, I don't have to interpret. I'm sorry, my time's up. May I answer that? Yes. Thank you. No, the CIC services case makes clear it's not of the subjective motive of the taxpayer, it's the objective motive, the objective relief requested. But what if you have a case that it's about annexation, period? I mean, that's what this case is about. It's just that if they win, they, let's just stipulate, that's why they're paying the attorney fees, okay? But it is true that in addition to tax benefits, they have other benefits that they would also enjoy and appreciate. Why would the TIA apply in that setting? If they hadn't brought it in federal court, it wouldn't apply, Your Honor. Okay, so your view is, so long as there's a tax benefit that plays a important, significant role in the case, TIA bars the whole thing? If it is the objective motive of the case, then those claims would fail in state court. But again, as briefed, they have the options in state court, which are the plain, speedy and efficient remedies. So I'm just, I'm probably just, I hate to be repetitive, I probably am. So if they amended their complaint tomorrow and they took out every single reference to tax, you would still move to dismiss? If the relief, objective motive of the, objective relief requested was taxes, Your Honor, yes. No, I'm saying they removed all of the 111 references to tax. You would still object to it being in federal court? Yes, no, no, Your Honor, that's the city's point here, which is in federal court, if they're asking for tax relief, the TIA bars it. If they're only asking for disannexation, that would be a very different case. I understand the court's point about how downhill that would flow to taxes, I appreciate that. But the city's filings in our argument here today is only that they're asking for the federal courts to determine the state court issue. Okay. So is this a, are you just arguing a sort of a pleading deficiency? Not deficiency, Your Honor, the court, the federal courts do not have jurisdiction over these state court tax claims according to these laws, excuse me, case law that plaintiffs, appellants have cited. Tell me what statute, Texas law allows a single property owner to challenge the city's annexation. Just, I want to, you say they can't, what law is that? Well, Your Honor, I believe it's the, I don't have the exact one in front of me, but I believe it's the 13th or 14th cause of action in there. What's, but you, whatever statute they cite, if they cite one. The tax code, Your Honor, 42.21, is that the one you're referencing? No, annexation, let's, there's no dispute about tax at all. I own land and the city of Austin wants to annex it, and I say hell no, I don't want you to annex my land. Do I have the right to challenge an annexation as a single individual property owner? And if so, what statute gives me that right? You do have the right, Your Honor, I believe it's, again, their 13th or 14th cause of action for disannexation. It's a state court cause of action, and I freely admit, I don't have the number off the top of my head. However, again, that 13th or 14th requested relief does not mention taxes at all in that separate claim. Just to be clear, I think what you're saying is that type of claim brought in federal court would be barred under the TIA if the objective motivation for that annexation claim happens to be tax implications. Yes, and that is- Even if it's got other motivations as well. Yes, and that's, again, that's what CIC holds. If you look to CIC as appellants have put in their brief, that is the ultimate decision, which is if you look to the objective motive of the relief requested. And I understand there are different reliefs being asked for here, but that is the city's position. I'm just going to get back to this. Let's say I own 100 acres, and the city wants to annex my property. And they want to put zoning restriction in there so you can only use, you have to subdivide. Subdivide, if you sell, you must have low-income housing. It puts all these restrictions on my property. And I say, I don't want any part of that. Can I bring that claim in federal court for taking? Or any other claim challenging the annexation, can I bring it in state court? Yes, Your Honor, I believe you can bring it in both. Under the hypothetical as you describe it, you can bring it in both because you're not requesting tax relief. The objective aim is I want to be disannexed. If you're claiming that- I don't want to be annexed or disannexed. Yeah, I want to be, I don't want to be disannexed. However- Well, I really have to wonder whether the magistrate judge read the complaint because the first request is granting the homeowner's petitioner to disannex under Texas local government code section 43-128B. Invalid, second, because, or preferably because it violates chapter 43 of the Texas local government code. Third is, violates Austin city charter, declaration, limited purpose jurisdiction. Fifth is injunction directing the city to comply with chapter 43. And then there are claims about the Texas constitution and the 14th amendment. And that's prayers A through H. And then only two that talk about taxes. And then another one, two, three, three substantive complaints about, you know, municipal services, things related to annexation. Yes, Your Honor, and I can't speculate as to what the district court thought. I can only read, you know, what they put in their report. And again, under the CIC services decision, it's the objective motive. Thank you, Your Honor. Would you agree that the objective motivation for this tax, I know there are lots of other benefits, but that's certainly a big one. No, I wouldn't agree with that, Your Honor. The objective criteria, we look at the complaint. We look at the text. We're asking for disannexation. That's all. That's what we're asking for. What if we say, okay, you can proceed with that, but every claim that mentions tax must be stricken? So that would be a request for relief, I and J. I'm happy to take that deal. I'm happy to take that situation. Can I ask you one, well, this probably goes beyond plain subpoena, but this goes to plain subpoena and efficient remedy. He cited a Cameron County appraisal, which I think is an El Paso case. And although his brief is talking about that in terms of exhaustion, the appraisal board, the interior quotation says, or the courts have historically asserted jurisdiction over suits where a taxpayer alleges violations of his or her constitutional rights. That's appraisal board of El Paso County versus Fisher. Is that a remedy? Well, the point I would make there is that if this is a case that can be brought in a court of general jurisdiction, in the state, because it doesn't involve assessment levy collection and would otherwise need to go to the tax proceeding, if it can be brought in a court of general jurisdiction, then it can be brought here. And so our position would, there's only problems here if the court agrees with the city that this involves assessment levy collection. Well, I was a little disturbed by the equivocation in your brief to the effect, and it said more than once, there is likely to be a problem with state jurisdiction. And? Well, yes, Your Honor. I think two arguments there. One is if this court says this is a tax case, then I think we've got a bit of an issue because under Cameron Appraisal District versus Rourke, which is the Supreme Court of Texas 2006 case, that suggests if it's a tax case, you need to go to the tax protest proceeding. The other point is that if counsel is right, that we have to depend, if this is an annexation case, and I think he's wrong about this too, but if he says it's an annexation case, then it can only be brought by the Texas AG or Travis County DA. Your Honor asked about whether there's a case in Texas saying that we can bring our claims to challenge annexation. The answer is yes. Alexander Oil is a Supreme Court of Texas case that says if you are saying that the taxing entity exceeded the power that the legislature gave it, then you can bring it as a challenge to the voidness of that annexation. And that would be in situations of no notice, which wasn't given here, no legal descriptions, which didn't happen here, no closed annexation, meaning you didn't close all sides of the polygon, didn't happen here, and you failed to get landowner consent, which is a new requirement under Texas law that you get consent for most annexations. But I also want to address Your Honor's question about the characterization of the ordinance, the 1986 ordinance, because I think that's a really important point. Our position is that it's either we were disannexed in 1988 by the Texas legislature, or if that ordinance is repealed, then we go back to the status quo ante, which was that we were not in the city status quo ante because of the nature of what had happened. The dams that were originally built, they were destroyed. The city said in the 1960s, we went back and looked at this, the original strips of land that were given to the city appear to now be underwater. And so our position is if you take away the 1986 ordinance, then the city has no claim for us to be in the city. So I think the city is going to be in a lot of trouble if we get to the merits. I also want to just... You agree that we're all reading CIC correctly to require the objective aim analysis, right? Yes, objective, objective. Right, objective. Not our subjective motives. I mean, I'm sure some of our folks want to get out because they prefer not to pay taxes. Some of them don't want to deal with the city of Austin's regulations. But for all the reasons I've stated, there are really only two possibilities here, both entitle the landowners to a federal forum. The CIA doesn't apply because it's not a challenge to assessment, levy, collection, and involves a separate legal mandate. Or if you say the TIA applies, then we've got issues if we go back to state court with not having an efficient remedy. It would be fair to say, though, that tax is the... I'm trying to think of the metaphors, dog wagging the tail or tail wagging the dog. I mean, it's... Tax is what's going on here, right? There are other benefits. I get it. And of course, the Supreme Court would tell you, don't look at our subjective motive. Look at what we ask for. Look at what... And we ask for disannexation. And, you know, for these reasons... But the question is why? Why do your clients care about annexation? Would it be fair for us to assume that tax is a big part of it? I'm not saying it's the only... Your Honor, I represent 300-something sets of landowners. I think different ones may have different reasons why they don't want to be in the city of Austin. I think there are a lot of people in Central Texas... Are you saying that there's a meaningful... I'm sorry, go ahead. Oh, I was just going to say, I think there are a lot of people in Central Texas who would not like to live in the city of Austin. Are you representing that you have a meaningful number of members of your plaintiff group for whom tax is not their motivation at all or a minority interest? I think it's fair to say the landowner group really just wants to be out of the city of Like, everything else that goes on with the city of Austin, they don't want to be any part of. You know, the next thing, they'll have homeless living there. I'm in Houston. I can speak about that. Well, if I may just conclude, Your Honor. We ask the court to vacate the district court's judgment and remand the case for a decision on the merits to remind the city of Austin that it has city limits. Thank you.